IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIONEL TREPANIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 6687 |
| | ) | |
| | ) | Judge Mark Filip |
| WILLIAM DAVIDSON, | ) | |
| JOHN ZIMMERMAN, | ) | |
| SHAWN McCORMICK, and | ) | |
| STEVE GASIOR, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lionel Trepanier ("Mr. Trepanier" or "Plaintiff"), sued Defendants—Cook County Forest Preserve District ("CCFPD"), and CCFPD Officers William Davidson ("Officer Davidson"), John Zimmerman ("Officer Zimmerman"), Shawn McCormick ("Officer McCormick"), and Steve Gasior ("Officer Gasior") (collectively, "Officers" or "Defendants")— for alleged constitutional violations that occurred during Mr. Trepanier's arrest at the Black Partridge Woods in Cook County, Illinois. (D.E. 1 ("Complaint").)[1] Mr. Trepanier alleges that Defendants subjected him to excessive force during that arrest.[2] The case is before the Court on

---

[1] The docket entries in this case are designated as "D.E. __."

[2] Plaintiff originally filed a five-count complaint against the CCFPD and the individual Officers. (D.E. 1.) In a previous order in this case, the Court dismissed Plaintiff's Count I (Arrest Without Probable Cause) claim against Defendants in their official capacities, and Plaintiff's claim for punitive damages. (D.E. 66.) The parties subsequently filed a Stipulation to Dismiss Certain Counts With Prejudice, which dismissed Count III (Conspiracy) against the Officers and the CCFPD, Count IV (Failure to Train and Supervise) against the CCFPD, and Count V (First Amendment) against the Officers and the CCFPD. (*See* D.E. 68.) Therefore, the CCFPD is no longer a party to the case. As for the individual Officers, the sole remaining count to be resolved is Count II (Excessive Force).

Defendants' motion for summary judgment. (D.E. 71.) As explained below, the Officers' summary judgment motion is respectfully denied, because there are substantial and material factual differences in the parties' accounts that preclude summary disposition of the case.

## BACKGROUND[3]

[3] The Court takes the relevant facts from Defendants' Rule 56.1(a) statement of facts ("Def. SF") (D.E. 73), Plaintiff's Rule 56.1(b)(3) response and Plaintiff's statement of additional facts ("Pl. Resp." or "Pl. SAF") (D.E. 75 & 76), and Defendants' Rule 56.1(b)(3)(B) response to Plaintiff's statement of additional facts ("Def. Resp."). (D.E. 82.) Where the parties disagree over relevant facts, the Court sets forth the competing versions. In addition, the Court resolves genuine factual ambiguities in Plaintiff's favor. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

Local Rule 56.1 ("L.R. 56.1") requires that statements of facts contain allegations of material fact, and the factual allegations must be supported by admissible record evidence. *See* L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. *See, e.g., Koszola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. *Accord, e.g., Malec*, 191 F.R.D. at 583 ("[A] movant's 56.1(a) statement should contain only factual allegations. It is inappropriate to allege legal conclusions."); *id.* ("Factual allegations not properly supported by citation to the record are nullities."). Additionally, where a party improperly denied a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. *See* L.R. 56.1(a), (b)(3)(B); *see also Malec*, 191 F.R.D. at 584. The Court disregards any additional statements of fact contained in a party's response rather than its statement of additional facts. *See id.* (L.R. 56.1(b)(3)(B) statement is the only acceptable means of presenting additional facts to the Court).

Plaintiff has filed a motion to strike a forty-two page portion of Defendants' Response. Plaintiff argues that in those pages Defendants have improperly provided extended "replies" to Plaintiff's Statement of Additional Facts. The Court agrees that Defendants' practice of replying to Plaintiff's responses is improper under well-established local rules. *See, e.g., White v. Sunstrand Corp.*, No. 98 C 50070, 2000 WL 713739, at *2 (N.D. Ill. May 23, 2000) (explaining that it is improper to file replies within the L.R. 56.1 factual framework and striking all of the reply material). Therefore, the Court strikes Defendants' replies to Plaintiff's responses and only considers the portion of the Defendants' Response that responds to Plaintiff's statement of additional facts. The Court further notes that such replies are unnecessary because the Court has disregarded any additional statements of fact contained in the Plaintiff's response as opposed to

Officers Davidson, Zimmerman, McCormick and Gasior were, at all times relevant to Plaintiff's complaint, law enforcement officers employed by the CCFPD. (Pl. Resp. ¶ 1.) On September 22, 2002, Officer McCormick was patrolling the west end of Cook County for illegal hunting and poaching. (*Id.* ¶ 3.) On the same day, Officer Davidson was patrolling the same area of the County as Officer McCormick. (*Id.* ¶ 4.) At 2 p.m. that day, Officer Davidson went to the Black Partridge Forest Preserve ("BPFP") as part of his regular patrol duties. (*Id.* ¶ 5.) Officers Zimmerman and Gasior worked the 10 a.m. to 6 p.m. shift as partners with the mounted unit on September 22, 2002. (*Id.* ¶ 6.) After Officers Zimmerman and Gasior returned their horses to the pasture, they decided to go on patrol and meet Officer McCormick in the afternoon at the grove of the BPFP (the "Grove"). (*Id.* ¶ 7.)

The Grove is an area in the BPFP that is described by one of the officers as a "seedy" locale, "with a lot of vagrants and undesirable individuals who 'hang out' there." (Def. SF ¶ 8.)[4] Although alcohol is not allowed in the BPFP, both the Officers and Plaintiff have seen alcohol being consumed there, particularly in the Grove. (Def. SF ¶ 9; Pl. Resp. ¶ 10.) There is a creek in the Grove, with a small bridge spanning it. (Pl. Resp. ¶¶ 22, 23.) On the far side of the bridge (if one walks from the direction of the parking lot near the Grove), there is a shelter in the Grove with a picnic table. (*Id.* ¶ 11.)

When Officers Zimmerman and Gasior arrived in the parking lot at the Black Partridge

---

its statement of additional facts.

[4] Plaintiff's denials of statements 8 and 9 are unsupported by the cited portions of the record; therefore, both statements are deemed admitted. *See, e.g., Malec*, 191 F.R.D. at 584. In addition, Plaintiff inserts legal argument into both replies. Such legal citation in L.R. 56.1 filings is improper. *Id.* at 585.

Forest Preserve, Officer Davidson was already there, and the three officers walked down the path

and over the bridge to the shelter in the Grove. (*Id.*) The shelter had cans and broken bottles of

liquor scattered around it. (*Id.*) A group of 8 to 10 men were sitting at a picnic table near the

shelter, and the officers informed the group of men that glass bottles and alcohol were not

allowed in the Grove. (Def. SF ¶ 12.)[5] The three officers returned to the parking lot where they

met Officer McCormick. (Pl. Resp. ¶ 13.)

On that same afternoon, Plaintiff was being driven to the BPFP by Sheila Mulvey-Tatoris

("Ms. Mulvey-Tatoris") and Irene Mulvey ("Ms. Mulvey") to meet his friends. (*Id.* ¶ 14.)

Robert Rudner ("Mr. Rudner"), apparently one of the friends Plaintiff was coming to meet, called

Plaintiff while he was en route to the preserve. (*Id.* ¶ 15.) Mr. Rudner alerted Plaintiff that

police were present at the preserve and said that he was disturbed by the police looking in his

bag. (*Id.*) The Officers were talking in the parking lot when a truck pulled into the lot and

Plaintiff, Ms. Mulvey-Tatoris, and Ms. Mulvey got out of the truck. (*Id.* ¶ 18.) Plaintiff walked

past the police officers and waved towards them. (*Id.* ¶ 19.)

At this point, the parties' accounts of events diverge significantly. What is undisputed is

that after some time spent by the Officers and Plaintiff in the Grove, during which Plaintiff was

arrested and handcuffed, the parties returned to the parking lot. (Plaintiff Resp. ¶ 68.) As part of

their standard procedure, the Officers called the Lemont Fire Department to come to the forest

preserve to examine Plaintiff. (*Id.* ¶ 73.) Officer Davidson adjusted the handcuffs on Plaintiff in

the parking lot because Plaintiff complained that his wrists hurt. (*Id.* ¶ 74.)

Once the paramedics arrived, they conducted a standard, head-to-toe assessment of

---

[5]  The Court strikes Plaintiff's denial of ¶ 12 as it is non-responsive to the matter asserted.

Plaintiff, during which Plaintiff did not fully disrobe. (Pl. Resp. ¶ 76.) Plaintiff complained of numbness to the left hand and wrist, left leg, and center of the forehead. (*Id.*) The paramedics found no injury to Plaintiff's wrists and noted that Plaintiff had good pulse and good capillary refill, which was an assessment that checked the pulse and the blood flow to the wrist area. (Def. SF ¶ 77.)[6] Upon examination of Plaintiff's left leg, the paramedics found one raised welt approximately four inches long and one inch wide on the left thigh, which paramedic William Anderson ("Anderson"), one of the paramedics conducting the examination, described as "fairly superficial." (*Id.* ¶ 78.) The paramedics also assessed Plaintiff's head based on Plaintiff's complaints, and they found no injury. (*Id.* ¶ 79.)

Plaintiff declined medical treatment, telling Ms. Mulvey-Tatoris that he was okay, and then Officer Davidson transported him to the Oak Forest Police Department. (Pl. Resp. ¶ 81.) Officer Davidson filled out an Offense Report and a Use of Force Report regarding the incident in the Grove. (Pl. SAF ¶¶ 17, 18.)[7] Officer Davidson charged Plaintiff with a Cook County Forest Preserve ordinance violation for disobeying a police officer and a violation of 720 ILCS 5-31-1A for resisting or obstructing a peace officer. (Def. Resp. ¶ 25.) Plaintiff was not charged with possession of an illegal substance or with assault. (*Id.* ¶¶ 25, 26.)

---

[6] In his responses to paragraphs 77-79, Plaintiff admits Anderson's testimony about the results of the medical examination, but denies that the examination assessed the full extent of his injuries. (Pl. Resp. ¶¶ 77-79.) Plaintiff's denial impermissibly introduces additional facts, and further, the cited excerpt from the deposition of Anthony Nalepa, apparently another paramedic at the scene, does not support Plaintiff's statement regarding his injuries. Therefore, the Court strikes Plaintiff's denials for summary judgment purposes.

[7] Defendants deny the paragraphs in which these statements are contained in their entirety (potentially on the basis of Plaintiff's characterization of the reports), but fail to cite any record evidence refuting the fact that Officer Davidson filled out both reports. (*See* Def. Resp. ¶¶ 17, 18.) Therefore, the Court deems the fact, as stated above, admitted.

Plaintiff's hands and wrists were x-rayed on November 11, 2002 at Oak Lawn MR & Imaging Center; no fractures or subluxations were found and the analysis indicated that "metacarpophalangeal and interphalangeal joints are intact." (Def. SF ¶ 95.)

Plaintiff filed the instant suit on September 22, 2003. (D.E. 1.) The Complaint brought five counts against the CCFPD and the Officers. (Id.) In September 2004, Plaintiff was convicted beyond a reasonable doubt in state court of resisting arrest, which the state court defined in pertinent part as when: "[a] person commits the offense of resisting a peace officer when he knowingly resists or obstructs the performance of any authorized act within the official capacity of one known to him to be a peace officer." (Pl. Resp. ¶ 89; Def. Resp. ¶ 25.)

I. The Officers' Account Of Plaintiff's Arrest[8]

In the parking lot, Officer Davidson observed that Plaintiff had his fist closed around a plastic sandwich bag; it also appeared that Plaintiff was attempting to hide the bag by shoving it into his pants pocket and walking away fast down the path into the forest preserve. (Def. SF ¶¶ 20, 21.) As Plaintiff, Ms. Mulvey-Tatoris, and Ms. Mulvey moved towards the trail head of the path into the Grove, Officer Davidson asked Plaintiff to stop. (Id. ¶ 22.) Officer Davidson further claims that he ordered Plaintiff to stop several times as he walked quickly after Plaintiff. (Id. ¶ 23.) Plaintiff then began running, and Officer Davidson ran after him with Officers Zimmerman and McCormick following. (Id. ¶ 24.)

Officer Gasior did not run with the other officers and instead remained in the parking lot,

---

[8] Plaintiff has denied most of the statements of fact relating to Defendants' account of the events surrounding his arrest, with the exception of paragraphs 30, 47, 52, 54, 55, 60, and 63-64. The Court has included only facts stated by Defendants that are both material and supported by the cited record evidence.

with Ms. Mulvey-Tatoris and Ms. Mulvey. (*Id.* ¶ 29.) Officer Gasior and the two women then proceeded down the path after the others and stopped immediately before crossing the bridge. (*Id.* ¶ 30.) Officer Gasior states that the men whom the Officers had been talking to earlier on the opposite side of the creek began to come towards the bridge. (*Id.*) Officer Gasior did not see any of the events that transpired in the creek. (*Id.* ¶ 69.)

Plaintiff was near the creek in the Grove when Officers Davidson, McCormick, and Zimmerman reached him. (*Id.* ¶ 23.) Plaintiff then ran down the right side of the bridge and got in the creek.[9] (*Id.* ¶ 25.) Officer Zimmerman believed that Plaintiff was going to go under the bridge and flee, so he ran down the left side of the bridge and went into the creek to block Plaintiff. (*Id.* ¶ 26.)[10] Officers Zimmerman, McCormick, and Davidson saw Plaintiff in a crouched position in the creek emptying a green leafy substance out of a sandwich bag into the water. (*Id.* ¶ 27.) Officer Davidson ordered Plaintiff to stop, and he and Officer McCormick jumped into the water to take Plaintiff into custody. (*Id.* ¶ 28.) Officer Davidson told Plaintiff that he was under arrest and ordered him to put his hands behind his back. (*Id.* ¶ 33.) Officer McCormick touched Plaintiff just as he finished emptying the sandwich bag and had been told that he was under arrest. (*Id.* ¶ 34.)

Plaintiff refused to allow himself to be handcuffed, pulled away, and resisted arrest by

---

[9] Plaintiff denies that he jumped into the creek. (Pl. Resp. ¶ 25.) The sections of deposition transcripts cited by Defendants do not state that Plaintiff jumped into the creek. Therefore, the Court only relates the fact as supported by the evidence.

[10] Plaintiff admits this statement in part and "objects" to it in part. Under L.R. 56.1, the only proper responses to statements of fact are admit or deny. *See id.* Moreover, the evidence cited by Plaintiff does not refute that Officer Zimmerman subjectively believed that Plaintiff was going to flee under the bridge. Therefore, the Court deems the statement admitted.

swinging his arms from left to right. (*Id.* ¶ 35.) Officer Davidson believed that Plaintiff was

trying to hit him, and Officer McCormick was afraid of being struck by Plaintiff. (*Id.* ¶¶ 36, 37.)

Furthermore, Officer McCormick believed that Plaintiff was an active resister and aggressor and

that, by flailing about, Plaintiff could cause bodily harm. (*Id.* ¶ 43.) The creek was about a foot

deep, with an uneven and muddy bottom and some exposed rocks that made it difficult for the

officers to maintain their balance. (*Id.* ¶¶ 40, 44.)[11] Officer Davidson was concerned that during

---

[11] Plaintiff's response to this statement relies on support from Plaintiff's Exhibit 12, which includes a videotape of an interview of "Mr. Bill Miller" (D.E. 76, Ex. 12A) that was recorded at the creek by Mr. Lorenz Lessin some time after the arrest, and a transcript of that interview. (*Id.*, Ex. 12B.) Defendants have moved to strike Plaintiff's Exhibit 12 in its entirety. (D.E. 77.) Because other evidence put forth by Plaintiff is sufficient, not only to support his denial of this particular fact, but to create multiple issues of material fact and so to withstand Defendants' motion for summary judgment, at this time the Court need not rule definitively on the admissibility of Exhibit 12. Therefore, the Court denies without prejudice Defendants' motion to strike it. (D.E. 77.)

However, Exhibit 12 is essentially an unsworn statement by an individual who has never been located and been available for deposition. In addition, the original, unedited tape of the interview has never been produced to Defendants. And, Mr. Lessin, the videographer, has failed to appear for two scheduled depositions. As a consequence, it is unlikely that Exhibit 12 would be admissible at trial. (*See* D.E. 88 at 2-6.) *See, e.g., Berwick Grain Co., Inc. v. Illinois Dept. Of Agriculture*, 116 F.3d 231, 234 (7th Cir. 1997) (affirming district court's decision not to admit an unsworn transcript of an interview for the purposes of a summary judgment motion, on the grounds that "in its current form, it is not admissible under Federal Rule of Civil Procedure 56(e)."); *accord, e.g., Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (stating that "unsworn documents purporting to be affidavits may be rejected.") (citing, *inter alia, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 n.16 (1970)). Even if Exhibit 12 were determined to be in an admissible form, it would still appear to contain content that was inadmissible hearsay with no applicable hearsay exception. *See, e.g., Pfeil*, 757 F.2d at 860-61.

Defendants have also moved to strike Plaintiff's Exhibit 15 (D.E. 76, Ex. 15), which is the expert report of Mr. Michael Lyman. (D.E. 77.) As with Exhibit 12, the evidentiary value of Exhibit 15 is not necessary to create a genuine issue of material fact. Therefore, the Court does not consider Exhibit 15 and denies without prejudice Defendants' motion to strike Exhibit 15. (D.E. 77.) Presumably Plaintiff expects to present any expert testimony live at any trial. Thus, the hearsay defects that otherwise would appear to exist concerning the unsworn submission—*see, e.g., Wittmer v. Peters*, 87 F.3d 916, 917 (7th Cir. 1996); *Carr v. Tatangelo*,

the struggle one of them could get hurt. (*Id.* ¶ 42.)

Officer Davidson took out his expandable ASP baton, extended it, and told Plaintiff to stop resisting. (*Id.* ¶ 45.) Plaintiff kept resisting by moving around and not allowing Officer Davidson to gain control of him. (*Id.* ¶ 46.) (As noted elsewhere, Plaintiff was convicted of resisting arrest and he does not presently dispute that fact. (Pl. Resp. ¶ 46.)) At that point, Officer Davidson struck Plaintiff one time on the back of the thigh with the baton to stun him so he would comply and put his hands behind his back. (Def. SF ¶ 47.) While these events were occurring, Officer McCormick was trying to arrest Plaintiff and did not know where Officer Davidson was touching Plaintiff. (*Id.* ¶ 38.) Officer McCormick avers that he only used his hands and handcuffs in his attempt to get Plaintiff under control, and that he never punched, hit, or kicked Plaintiff. (*Id.* ¶¶ 39, 72.) After Officer Davidson struck Plaintiff with the baton, Plaintiff crouched down with his arms locked in front of him, at which point the officers brought Plaintiff's arms behind his back and handcuffed him. (*Id.* ¶¶ 47, 48.)

Once Officer Zimmerman saw Officers McCormick and Davidson get into the creek and reach out to grab Plaintiff, Officer Zimmerman got out of the creek and went up the bank, where he saw the men who had been in the Grove congregating on the bridge above the other officers. (*Id.* ¶ 31.)[12] The men on the bridge outnumbered the four officers. (*Id.* ¶ 50.) Officer

---

338 F.3d 1259, 1273 n.26 (11th Cir. 2003)—would be mooted, as the testimony (as opposed to the report) would be offered as evidence.

[12] Defendants allege that Officer Zimmerman went up to the bridge "because he saw the men who had been in the grove congregating on the bridge . . . ." (Def. SF ¶ 31.) However, Officer Zimmerman's deposition testimony states that he went up to the bridge because Officers McCormick and Davidson were capable of apprehending Plaintiff without him, and that he saw the men on the bridge after he had left the scene at the creek. (D.E. 73, Ex. D at 166-169.) Therefore, the Court only states the fact as supported by the record evidence.

Zimmerman ran up to the bridge and ordered the men to back off of the bridge, but they kept coming forward. (*Id.* ¶ 32.) Officer Davidson saw Officer Zimmerman on the bridge attempting to keep the men from interfering. (*Id.* ¶ 51.)[13] The men did not move off of the bridge for a few moments, and Officer Zimmerman had to command them about five times to get off of the bridge. (*Id.* ¶ 53.) In the meantime, Plaintiff was inciting the men by yelling "police brutality." (*Id.* ¶ 55.) After the men moved off and away from the bridge, Officer Zimmerman heard Officer McCormick yell for help in getting Plaintiff from the shore of the creek up to the path. (*Id.* ¶ 54.) Officer Zimmerman did not see Officer Davidson strike Plaintiff with the baton and did not see Plaintiff get handcuffed or (allegedly) get kicked. (*Id.* ¶ 70.)

Officers Zimmerman and Gasior walked over to the side of the bridge where Plaintiff was handcuffed and silent at the shore of the creek, with Officers McCormick and Davidson standing over him. (*Id.* ¶¶ 56, 57.)[14] The creek bank is a steep vertical incline of two feet. (*Id.* ¶ 60.) Plaintiff refused to move after he was handcuffed. (*Id.* ¶ 61.) Officer Zimmerman believed that Plaintiff intentionally made the officers work to get him up and out of the riverbed. (*Id.* ¶ 62.) Because Officers Davidson and McCormick were not able to get Plaintiff out of the creek due to the steepness of the bank, Officer Zimmerman formed a human chain by holding on to Officers Gasior and McCormick, and they pulled Plaintiff up the creek bank. (*Id.* ¶¶ 63-64.)

Once Plaintiff was on the path, he still refused to walk. (*Id.* ¶ 65.) Officers McCormick and Davidson went on either side of Plaintiff, and then lifted him up underneath the armpits and

---

[13] Plaintiff admits that Officer Davidson saw Officer Zimmerman on the bridge, but denies that the men on the bridge were interfering. (Pl. Resp. ¶ 51.)

[14] Plaintiff admits this statement, except for denying that he was silent while he was handcuffed at the shore.

carried him across the path back to the parking lot. (*Id.* ¶ 66.) While the two officers were carrying Plaintiff, he held his legs up so that they were not touching the ground. (*Id.* ¶ 67.) Eventually, about halfway down the path, Plaintiff put his legs down and began to walk on his own. (*Id.* ¶ 68.) Officer Zimmerman did not see anyone grab Plaintiff by the handcuffs. (*Id.* ¶ 71.) Officer Gasior did not see or hear Plaintiff complain on the way back to the parking lot. (*Id.* ¶ 69.)

Defendants have provided an expert report from Mr. Dennis Waller, who is offered without challenge as an expert in police policy, procedure, and practice. (*See* Def. SF, Ex. G.) After reviewing the relevant materials in the case, Mr. Waller concluded that the Officers' conduct, including the single baton strike and the handcuffing, was "reasonable and appropriate to the circumstances" and "consistent with departmental policy and nationally accepted standards of law enforcement practice." (Def. SF ¶¶ 91-93.)

II.     Plaintiff's Account Of The Arrest[15]

Plaintiff alleges that he walked from the parking lot to the creek with Ms. Mulvey and Ms. Mulvey-Tatoris. (Pl. SAF ¶ 5.) They were visiting the creek that day for an environmental outing with fellow members of the Green Party, a political party particularly focused on environmental issues. (*Id.* ¶¶ 5-6.) Plaintiff was already to the edge of the creek, and the two women were not far behind, when they heard shouts and other loud noises coming through the

---

[15] Defendants have denied nearly every statement of fact relating to Plaintiff's account of the events surrounding his arrest. The Court has included only the statements of fact by Plaintiff that are both material and supported by cited record evidence. Where Defendants have failed to identify evidence that properly supports their denial, the Court has noted the absence of support and has deemed the fact admitted for purposes of summary judgment. Furthermore, where Plaintiff has admitted one of Defendants' statements relating to the arrest, the Court has noted that the fact is admitted.

woods. (*Id.* ¶ 7.) Plaintiff was then tackled from behind by two officers who had run out of the woods, apparently Officers Davidson and McCormick.[16] (*Id.*)[17] Officer Zimmerman also got into the creek, but he soon left the water and walked to the top of the bridge. (*Id.* ¶ 24.) Officer Zimmerman did not assist in the arrest of Plaintiff because he thought that two officers were

---

[16] Although Plaintiff does not name the officers in his statement of additional facts, in the fact section of his reply memorandum, he asserts that "[a]t least two of the officers, most likely McCormick and Davidson, ran at and jumped on Mr. Trepanier from behind, tackling him." (D.E. 74 at 2.) The Court accepts Plaintiff's assumption as stated in his memorandum; this assumption is also consistent with the fact that Plaintiff directs his claims of use of excessive force, as opposed to claims of failure to intervene, solely against Officers Davidson and McCormick. (*See id.* at 5.)

[17] Plaintiff alleges, and Defendants deny, that four officers ran out of the woods and tackled him. (Pl. SAF ¶ 7.) However, the cited portions of witness deposition testimony simply do not suggest that four officers knocked Plaintiff down. Kurt Leslie's testimony states only that "*[t]hey* definitely tackled him," and "*they* ran down the hill screaming and hollering." (D.E. 76, Ex. 5 ("Leslie Dep.") at 120-21 (emphasis added).) Similarly, Ms. Mulvey states that "*[t]hey* were running at us." (*See* D.E. 76, Ex. 3 "Mulvey Dep." at 22 (emphasis added).) In fact, the cited portion of Ms. Mulvey's deposition suggests that Officer Gasior was standing beside her at the relevant time, rather than being involved in any tackling of Plaintiff. (*See* D.E. 76, Mulvey Dep. at 22-23 (stating that "the oldest officer stood by Sheila and I" while the alleged beating in the creek took place).)

As for Plaintiff's own deposition, the cited portion states only that he was "hit from behind." (D.E. 76, Ex. 2 ("Trepanier Dep.") at 77.) Moreover, later in his deposition, Plaintiff indicates that two officers assaulted him in the creek, pushing his head down on a rock and "hitting and kicking him," and the other "hitting and kicking" him. (*Id.* at 129; *accord, e.g, id.* at 132-34 (discussing the two officers that were hitting him); *id.* at 149 (answering affirmatively that when Plaintiff was lifted from the creek to the bank, "there were two other officers that had not been in the creek before.").) In addition, Plaintiff's other statements of fact indicate that Officers Zimmerman and Gasior were not in the creek during the arrest. (*See* Pl. SAF ¶ 21 (stating that Officer Zimmerman did not assist in the arrest of Plaintiff); *id.* ¶ 23 ("Gasior [was] available as needed and was right there on the scene, 'comforting' Sheila and Irene during the incident.").) Therefore, the only record evidence from Plaintiff that specifically describes the number of officers who assaulted him in the creek suggests that two officers were involved in that alleged assault. Accordingly, the Court states the assertion of Plaintiff to the extent it is supported by the evidence, namely, that two officers tackled Plaintiff.

enough to handle the situation. (*Id.* ¶ 21.)[18] Officer Davidson then allegedly pushed Plaintiff's

head very hard against a rock. (*Id.* ¶ 8.)[19] After Plaintiff was knocked to the ground, he was

struck at least twice with a metal baton by Officer Davidson,[20] and he felt multiple blows to his

legs, head, and back. (*Id.* ¶ 10.) Plaintiff was in pain and curled into a fetal position on his knees

with his arms in front of him. (*Id.*) Plaintiff alleges that he never threatened, swung his fist,

arms or legs, or ran at any officer (*id.* ¶ 12), although he later concedes, as he must, that he was

convicted beyond a reasonable doubt of wrongfully resisting arrest. (Pl. Resp. ¶ 46.)

During the incident, Plaintiff asserts that the men on the bridge were not moving. (Pl.

SAF ¶ 15.) Officer Zimmerman heard Plaintiff yelling "Police brutality," "Ow," "No" and "Quit

hitting me." (*Id.* ¶ 24.)[21] Officer Gasior was on the scene during the incident, "comforting" Ms.

Mulvey and Ms. Mulvey-Tatoris (*id.* ¶ 23), who were in the vicinity.

After Plaintiff was handcuffed, he allegedly was told to "get up and walk like a man."

(*Id.* ¶ 13.) Plaintiff claims that he could not stand on his legs and asked for a medic. (*Id.*) Three

to four of the officers allegedly jerked Plaintiff off the ground to get him up the creek bank;

---

[18] Defendants admit this fact.

[19] Plaintiff's statement of this fact, and the cited record evidence, does not name the officer who allegedly pushed his head against a rock. (Pl. SAF ¶ 8; D.E. 76, Trepanier Dep. at 78.) However, Plaintiff's testimony states that it was Officer Davidson who allegedly committed these acts. (*See* D.E. 76, Trepanier Dep. at 124-26.) None of Plaintiff's supportive eyewitness testimony conflicts with Plaintiff's statement, and so the Court relies on Plaintiff's deposition to identify Officer Davidson.

[20] Plaintiff's deposition identifies the officer who hit him with the "metal pipe" as "the arresting officer who had knocked me down." (D.E. 76, Trepanier Dep. at 138.) According to Plaintiff's account of events, that is Officer Davidson.

[21] Because Defendants' denial of this statement is unsupported by the cited record evidence, the Court deems the fact admitted for summary judgment purposes.

Officer Davidson allegedly was pulling on the handcuffs and using his baton to twist them, causing Plaintiff great pain and bruising. (*Id.*) Plaintiff was then allegedly dragged down the path by Officers McCormick and Gasior, while Officer Davidson allegedly kept the baton in the handcuff chain and compressed Plaintiff's wrists. (*Id.* ¶ 14; Pl. Resp. ¶ 66 (citing Trepanier Dep. at 155-57).)[22] The officers allegedly continued to drag Plaintiff until he was able to use his legs and walk on his own to the parking lot. (Pl. SAF ¶ 14.)

Plaintiff has provided the deposition of Mr. Michael Lyman, Ph. D, as expert testimony in support of his case. (D.E. 76, Ex. 16.) Mr. Lyman reviewed the relevant materials in this case, including the CCFPD's use of force model. (*See, e.g.*, Pl. SAF ¶ 40.) In his deposition, Mr. Lyman opined that Officer Davidson's use of the baton was "excessive, unreasonable, and violative of departmental policy and national standards." (*Id.* ¶¶ 36, 44.)

### LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmovant cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a scintilla of evidence to show a genuine triable issue of material fact. *See Murphy v. ITT Educ. Servs., Inc.*, 176 F.3d 934, 936 (7th Cir. 1999) (citation omitted). The Court views the record and all reasonable inferences drawn therefrom in

---

[22] Plaintiff does not name the two officers who allegedly dragged him to the parking lot with Officer Davidson. (*See* D.E. 76, Trepanier Dep. at 155-57.) However, Plaintiff provides physical descriptions that match Officers McCormick and Gasior. (*See id.*)

the light most favorable to the nonmovant. *See* Fed. R. Civ. P. 56(c); *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

## DISCUSSION

I.    Plaintiff's Excessive Force Claim is Not *Heck*-Barred

Plaintiff alleges that the Officers used excessive force, or failed to intervene to prevent the use of excessive force, in effectuating his arrest, and so violated his Fourth Amendment rights and 42 U.S.C. § 1983. (D.E. 74 at 5.) Defendants assert that "[w]ith plaintiff's criminal conviction, the case law precedent provides a further basis for barring plaintiff's claim of excessive force based on the [baton] strike by Davidson and the handcuffing by Davidson and McCormick." (D.E. 72 at 9 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994).) The Court respectfully finds that the principles in *Heck*, as applied in a recent Seventh Circuit decision, do not bar Plaintiff's excessive force claim.

In *VanGilder v. Baker*, 435 F.3d 689 (7th Cir. 2006), the Seventh Circuit reversed a decision granting summary judgment for a defendant police officer on a Section 1983 excessive force claim, based on a determination that *Heck* did not bar such a claim. The pertinent facts in *VanGilder* are similar to those in the instant case. The plaintiff in *VanGilder* was arrested for public intoxication; he was taken to the hospital for a blood test, which he resisted, leading to a violent altercation between him and the arresting officer. *Id.* at 690-91. The parties gave materially different accounts of the altercation. *Id.* The plaintiff was convicted of resisting arrest and also brought a Section 1983 action alleging excessive force against the officer for his actions at the hospital. *Id.* at 691-92.

In *VanGilder*, the Seventh Circuit stated that: "*Heck* holds that before a § 1983 plaintiff

15

may recover damages for alleged harm 'caused by actions whose unlawfulness would render a conviction or sentence invalid,' the plaintiff must first prove that his conviction or sentence has been reversed, expunged, or called into question by the grant of a petition for habeas corpus." *Id.* at 691 (quoting *Heck*, 512 U.S. at 486-87). To properly apply the principles in *Heck*, "a district court must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted." *Id.*

Consequently, the Seventh Circuit framed the *Heck* issue as "whether an action against Baker [the defendant officer] for excessive use of force necessarily implies the invalidity of VanGilder's [plaintiff's] conviction for resisting." *VanGilder*, 435 F.3d at 692. The court answered that question in the negative, stating that:

> [A]s a threshold matter, it is clear that a judgment for VanGilder, should he prevail, would not create two conflicting resolutions arising out of the same or identical transaction. VanGilder does not collaterally attack his conviction, [or] deny that he resisted Baker's order to comply with the blood draw . . . . Rather, VanGilder claims that he suffered unnecessary injuries because Baker's response to his resistance—a beating to the face that resulted in bruises and broken bones—was not, under the law governing excessive force, objectively reasonable.

> Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages.

*Id.* (citations and internal quotation marks omitted); *accord, e.g., Gregory v. Oliver*, 226 F. Supp. 2d 943, 952 (N.D. Ill. 2002) (Shadur, J.) ("It is apparent that in some instances a Section 1983 claim does not contradict the events that result in plaintiff's convictions—two obvious examples would be an officer's unjustified imposition or excessive force in an overreaction to an arrestee's assault, or the imposition of excessive force after the event that led to a resisting-arrest conviction . . . .") (citation omitted).

*VanGilder* is controlling precedent here. Plaintiff in the instant case does not attack the validity of his conviction for resisting arrest, and a finding for Plaintiff in this suit would not create two conflicting resolutions out of the same incident. Instead, a victory for Plaintiff in the present matter could plausibly mean that a jury found that, although Plaintiff resisted arrest, either "he suffered unnecessary injuries because" the Officers' response to his resistance was not objectively reasonable, *VanGilder*, 435 F.3d at 692, or he suffered the use of excessive force "after the event that led to a resisting-arrest conviction." *Gregory*, 226 F. Supp. 2d at 952; *see also Trejo v. Village of Itasca*, No. 02 C 1193, 2004 WL 2608285, at *13 n.12 (N.D. Ill. Nov. 16, 2004) (acknowledging possibility of excessive force claim by plaintiff concerning events that occurred after resisting arrest misconduct). Accordingly, under the Seventh Circuit's decision in *VanGilder*, Plaintiff's excessive force claim is not barred by his conviction for resisting arrest.

II.     Questions of Material Fact Exist As To Whether Defendants Used Excessive Force Or Failed to Intervene to Prevent The Use of Excessive Force

Defendants move for summary judgment on the excessive force claim on the grounds that their use of force on Plaintiff was objectively reasonable. (*See, e.g.*, D.E. 72 at 10.) Defendants also argue that they are entitled to qualified immunity for their actions during the incident at issue. (*Id.* at 13.)

"Police officers are entitled to qualified immunity for actions taken during a stop or arrest insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (internal quotation marks and citation omitted). In determining whether an officer is entitled to qualified immunity, "the first inquiry must be whether a constitutional right

17

would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *accord, e.g., Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003). If no constitutional right has been violated, that is the end of the qualified immunity analysis. *See Saucier*, 533 U.S. at 201.

If a violation could be made out on the facts taken in the light most favorable to the plaintiff, the next step "is to ask whether the right was clearly established," that is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Precedent teaches that "[t]his inquiry . . . must be undertaken in light of the specific context of the case." *Id.* at 201. In making an assessment of qualified immunity in the context of summary judgment, the Seventh Circuit teaches that the nonmovant's version of disputed facts must be taken as true. *See, e.g., Payne*, 337 F.3d at 775 (collecting cases); *Morfin v. City of East Chicago*, 349 F.3d 989, 1000 n.13 (7th Cir. 2003). Precedent also makes clear that "the doctrine of qualified immunity leaves 'ample room for mistaken judgments' by police officers." *Payne*, 337 F.3d at 776 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Considering the situation of each officer individually, the Court finds that there are material disputed issues as to whether the Officers purportedly used excessive force, or actionably failed to intervene in the face of other officers using excessive force. Moreover, in considering the specific situation confronting each officer, the constitutional right was clearly established, so none of the officers is entitled to qualified immunity—at least on the basis of the facts as taken in the light most favorable to Plaintiff. In reaching this conclusion, the Court takes no position, of course, on the actual truth concerning the factual disputes.

A.     Officer Davidson

18

Plaintiff's account of the incident at issue begins with Officer Davidson allegedly, and without any warning or cause, tackling Plaintiff in the creek. (*See* Pl. SAF ¶ 7.) Officer Davidson then purportedly pushed Plaintiff's head into a rock, hit and kicked him on his legs, head and back, and then hit him more than once with his baton. (*Id.* ¶¶ 8, 10.) Much of this alleged assault occurred while Plaintiff allegedly was in a fetal position on his knees in the creek, trying to shield himself from the officer's blows. (*Id.* ¶ 10.) Once Plaintiff was handcuffed, Plaintiff alleges that Officer Davidson used his baton to twist and compress his handcuffs, and that Officer Davidson allegedly continued this painful abuse throughout the walk (or alleged dragging) across the parking lot. (*Id.* ¶¶ 13, 14.) Unsurprisingly, Officer Davidson's version varies substantially from Plaintiff's. The Court concludes that summary judgment must be denied.

When a claim of excessive force arises in the context of an arrest, the Court evaluates the officer's use of force "according to the reasonableness standard of the Fourth Amendment." *Morfin*, 349 F.3d at 1004 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Supreme Court has enunciated a fact-specific test for analyzing excessive force claims:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case . . . .

*Graham*, 349 U.S. at 396 (internal quotation marks, citations, and alterations omitted); *see also Payne*, 337 F.3d at 778 ("A police officer's use of force is unconstitutional if, judging from the

totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.") (internal quotation marks and citation omitted). Factors to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 249 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). This constitutional inquiry is an objective one. *See Payne*, 337 F.3d at 778.

"[W]hen material facts (or enough of them to justify the conduct objectively) are undisputed," the question of the reasonableness of the force is a legal question for the Court to decide. *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003). If, however, material facts are in dispute as to whether the police "acted unreasonably because they responded overzealously," precedent instructs that the case must go to a jury. *Id.*

In light of this well-established precedent, it is not the Court's place on summary judgment to make the credibility determinations needed to resolve the extensive factual disputes in this case—that task is the province of the factfinder. *See, e.g., VanGilder*, 435 F.3d at 692 (in an excessive force case, stating that "[e]xactly what happened during the blow-by-blow" between the officer and the plaintiff in the disputed altercation "is a question to be decided at trial."); *Morfin*, 349 F.3d at 999 (citing, *inter alia, Payne*, 337 F.3d at 770). Put differently, for purposes of summary judgment, the Court may not accept Defendants' version of the facts. *See, e.g., Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (stating that on summary judgment, the Court may not credit the movant's account and discount the non-movant's evidence); *accord, e.g., Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (reversing grant of

summary judgment for defendant officers where the plaintiff had introduced sufficient evidence to create a "credibility question").

Taking the facts in the light most favorable to Plaintiff, a jury could reach the conclusion that Officer Davidson did not act reasonably in using the force he allegedly employed in effectuating the arrest and thereafter. *See Bell*, 321 F.3d at 640; *accord, e.g.*, *Morfin*, 349 F.3d at 1005. Considering the factors articulated by the Supreme Court in *Graham*, Officer Davidson allegedly confronted a situation where Plaintiff had, at that point, committed no crime (serious or otherwise) and allegedly posed little to no threat to the officers or the others at the Grove. *See Graham*, 490 U.S. at 396. Although Defendants do not explicitly make this argument, the fact that Plaintiff was convicted of resisting arrest under Illinois law indicates that Plaintiff must have offered some unlawful physical resistance at some point. *See, e.g.*, *Falcone v. Village of Hanover*, No. 02 C 8747, 2004 WL 2900856, at *5 (N.D. Ill. Dec. 10, 2004) (collecting Illinois authorities). However, the resistance could possibly have been minor or have taken place early in the incident, which would still leave room for the excessive force violation asserted by Plaintiff. *See Gregory*, 226 F. Supp. 2d at 951 (stating that, "a defendant's conviction for resisting arrest does not necessarily bar an excessive force claim arising out of the arrest if the force used was objectively excessive," and finding that excessive force claim was not barred by plaintiff's conviction for resisting arrest where plaintiff alleged that defendant officers had beaten him with sticks and repeatedly punched his face while attempting to handcuff him); *accord, e.g.*, *Morfin*, 349 F.3d at 1005.[23]

---

[23] Defendants cite *Braun v. Baldwin*, 346 F.3d 761 (7th Cir. 2003), in support of their claim that no excessive force could be established in this case. The Court respectfully disagrees. First, the excessive force claim in *Braun* seems, read most generously, to be an allegation that

Of course, at trial the jury could accept Officer Davidson's position that Plaintiff was actively and aggressively resisting arrest and endangering himself and others, that Officer Davidson used only the amount of force necessary to effectuate the arrest, or that Officer Davidson at no time gratuitously twisted or lifted Plaintiff by his handcuffs. Likewise, a jury could find Officer Davidson's eyewitnesses and expert more credible than Plaintiff's, and that the medical evidence, which suggests minimal injury, supports Officer Davidson's story. However, drawing all inferences in Plaintiff's favor, in accordance with precedent, Officer Davidson's conduct, in light of the alleged minimal threat or resistance posed by Plaintiff, could be found to be unreasonable. *See, e.g.*, *Morfin*, 349 F.3d at 1005 ("If a jury were to credit [plaintiff's] version of events over than of the arresting officers, it could conclude that there was no reason for the officers to exert such force on [plaintiff]."). Accordingly, Plaintiff has raised a question of material fact as to whether Officer Davidson violated his Fourth Amendment rights.

The second step of the qualified immunity inquiry is to determine if the force allegedly used by Officer Davidson violated a "clearly established Fourth Amendment protection" so that he is not entitled to immunity. *See Saucier*, 533 U.S. at 207. For purposes of qualified immunity analysis at the summary judgment stage, the plaintiff's version of events is still the relevant basis for review. *See, e.g.*, *Payne*, 337 F.3d at 775 (collecting cases); *Morfin*, 349 F.3d at 1000 n.13.

"In delimiting the contours of a right" for qualified immunity purposes, the Court is directed to consider "case law on point or in closely analogous areas." *Kernats v. O'Sullivan*, 35

handcuffs were fastened too tightly. As explained above, the allegations here are much more extensive. Furthermore, it appears from *Braun* that the summary dismissal in that case may have been predicated on the Plaintiff's failure to adduce any competent proof of misconduct. *See id.* at 763. Here, Plaintiff has offered evidence which, if credited, could allow the conclusion that there was malicious punishment inflicted through manipulation of the handcuffs.

F.3d 1171, 1176 (7th Cir. 1994) (citation omitted); *accord Saucier*, 533 U.S. at 209 (discussing failure of plaintiff to identify a case demonstrating a "clearly established rule" prohibiting the officer's conduct). The Court has reviewed the analogous case law, and concludes that, taking the facts as presented by Plaintiff, "it would have been sufficiently clear to a reasonable officer that [Officer Davidson allegedly] used excessive force in the situation he confronted." *Payne*, 337 F.3d at 780.

Plaintiff has set forth an account of events wherein he was an "innocent citizen," having committed no crime or other misdeed, when Officer Davidson tackled, hit, and kicked him. "At the time of the arrest, it was clearly established that 'police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever.'" *Id.* (quoting *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)); *accord, e.g.*, *Taylor v. Kveton*, 684 F. Supp. 179, 185 (N.D. Ill. 1988) (Aspen, J.) (finding that defendant officers were not entitled to qualified immunity because "no reasonable officer would have believed that his actions in kicking an unresisting [plaintiff] . . . were lawful under the Fourth Amendment reasonableness standard.").

Plaintiff has also alleged that while he was lying in the creek, Officer Davidson struck him at least twice with a baton. Plaintiff has identified authority for the proposition that striking a non-aggressive party with a baton violates a clearly established constitutional right. *See, e.g.*, *Secot v. City of Sterling Heights*, 985 F. Supp. 715, 720-21 (E.D. Mich. 1997) (finding defendant officer precluded from claiming qualified immunity based on single blow to arm of peaceful protestor on a picket line). Moreover, Defendants do not dispute that an officer may not physically strike a non-threatening and surrendering arrestee with a baton.

23

In terms of Officer Davidson's actions after the arrest, there are several analogous cases where violently pulling on an arrested party's arms while they are in handcuffs or otherwise taking punitive actions once a suspect has been handcuffed and subdued was found clearly excessive. *See, e.g.*, *Payne*, 337 F.3d at 780 ("It was also well established that it was unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officer or others, and were suspected of committing only minor crimes.") (collecting authorities); *Miller*, 220 F.3d at 495 (finding plaintiff's account of being handcuffed and then "smacked around" while he was on the ground was sufficient to survive summary judgment on excessive force claim). Therefore, Officer Davidson is not entitled to qualified immunity because Plaintiff has sufficiently established that a reasonable officer in Officer Davidson's situation during and after the arrest would have believed the alleged force used to be excessive.

B.     Officer McCormick

According to Plaintiff, Officer McCormick tackled him in the creek for no reason, and then hit and kicked him while he was lying in a fetal position in the creek. (Pl. SAF ¶¶ 8, 10.) Officer McCormick is not alleged to have used baton strikes or to have taken punitive actions against Plaintiff after the arrest. However, the Court's prior discussion and conclusion regarding Officer Davidson's liability for allegedly hitting and kicking Plaintiff while he was in a non-threatening and surrendering position is equally applicable to Officer McCormick. Drawing all inferences in Plaintiff's favor, as the Court must, *Bell*, 321 F.3d at 640, Officer McCormick is not entitled to qualified immunity because Plaintiff has raised an issue of fact as to whether the hitting and kicking during the arrest was objectively unreasonable, *see Graham*, 490 U.S. at 397,

and has further shown that such a use of force would have been clearly excessive to a reasonable officer. *See Saucier*, 533 U.S. at 208.

With Officer McCormick, Plaintiff introduces his "closely linked" claim of excessive force by reason of failure to intervene. *See, e.g., Abdullahi*, 423 F.3d at 767. While a plaintiff must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right, a defendant's direct participation is not required. *Miller*, 220 F.3d at 495 (citation omitted). Specifically, with regard to failure to intervene claims, precedent teaches that "one who is given the badge of authority may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (stating that "*Byrd v. Brishke* remains the seminal case in this circuit on the duty of an officer to intervene to prevent summary punishment."). A police officer may be liable under Section 1983 for failing to intervene to prevent other law enforcement officers from inflicting excessive force against a citizen if that officer had reason to know:

> (1) that excessive force was being used, (2) that a citizen had been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*See Yang*, 37 F.3d at 285 (collecting authorities; emphasis in original); *accord, e.g., Miller*, 220 F.3d at 495 (citing *Yang*, 37 F.3d at 285). "[A] 'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Abdullahi*, 423 F.3d at 774 (quoting *Yang*, 37 F.3d at 285) (internal punctuation and inserted text in original). Finally, the Seventh Circuit has emphasized

that the prongs of this analysis typically implicate questions of fact—that is "'[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury *could not possibly conclude otherwise*.'" *Id.* (quoting *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)) (emphasis in *Abdullahi*).

Plaintiff's failure to intervene argument rests on the idea that, "to the extent that [Officer McCormick was] not directly laying hands or feet upon Mr. Trepanier," Officer McCormick had a duty to prevent Officer Davidson's unreasonable use of force. (*See* D.E. 74 at 9 ("Officer McCormick was right next to Davidson when Mr. Trepanier was struck.").) In addition, Plaintiff alleges that "all of the officers were present and purportedly dragging Mr. Trepanier to his feet while Officer Davidson was witnessed using his baton inside of Mr. Trepanier's handcuffs . . . ." (*Id.*)

Defendants argue that Plaintiff has not "established that [Officer McCormick] had a reasonable opportunity to intervene to prevent the alleged use of excessive force," and specifically, that Officer McCormick could not have anticipated that Officer Davidson would strike Plaintiff with the baton. (D.E. 80 at 10.) Defendants also contend that Officer McCormick did not see Officer Davidson lift Plaintiff by his handcuffs or twist the handcuffs with his baton. (*Id.*) Respectfully, the Court finds that Plaintiff has raised a question of fact as to whether Officer McCormick's alleged failure to intervene was actionable or otherwise entitled to qualified immunity. *See, e.g., Miller*, 220 F.3d at 491 (denying summary judgment to defendant officers for their alleged failure to intervene to prevent excessive force, when those officers were standing near other officers who were alleged to be "smacking around" an arrestee).

26

In deciding whether Officer McCormick had a reasonable opportunity to intervene, the Court notes that Officer McCormick's "presence" on the scene is undisputed. *See Byrd*, 466 F.2d at 10. The parties acknowledge that he was in the vicinity of Officer Davidson in the creek, and very near to Officer Davidson while they were getting Plaintiff up the creek bank and down the path. *See Abdullahi*, 423 F.3d at 774 (noting that defendant officers charged with failure to intervene were "mere feet away" from the officer who allegedly used excessive force and rejecting application of qualified immunity on failure to intervene claim). Contrary to Defendants' view, Officer McCormick's duty to intervene was not limited to Officer Davidson's baton strikes or his twisting of Plaintiff's handcuffs. From his vantage, at least according to Plaintiff's account of events and the reasonable inferences related to them, Officer McCormick would also have seen Officer Davidson shoving Plaintiff's head onto a rock and hitting and kicking Plaintiff multiple times while he was in the creek, and Officer McCormick would have had the opportunity, at the least, to tell Officer Davidson to stop. *See Yang*, 37 F.3d at 285 (determining that defendant officer should be liable for damages for failure to intervene where "the facts demonstrate several opportunities during which [defendant] could have acted."); *Miller*, 220 F.3d at 495 ("If, as we are required to do at this point in the case, [plaintiff's] allegations are taken as true, whichever officer was not directly responsible for the beating was idly standing by. If [plaintiff] can show at trial that an officer attacked him while another officer ignored a reasonable opportunity to intervene, he can recover."). For the alleged baton strikes, Officer McCormick could have cautioned Officer Davidson against striking Plaintiff the second time, if not the first time. *See generally Woods v. Clay*, No. 01 C 6618, 2005 WL 43239, at *11 (N.D. Ill. Jan. 10, 2005) (Lefkow, J.) (denying summary judgment based on determination that,

although plaintiff were arrested before defendant officer arrived on the scene, "he may have been in the position to prevent plaintiff from being falsely imprisoned.").

For the force used after the arrest, a reasonable jury could find that Officer McCormick would have seen that his fellow officer allegedly was behind Plaintiff and would have had reason to appreciate that undue force was being used against Plaintiff through the alleged extended manipulation of Plaintiff's handcuffs. *See, e.g., Taylor*, 684 F. Supp. at 183 (noting the defendant officers "acknowledged presence during the critical time period" and concluding that there was sufficient evidence that the officers failed to intervene to prevent an alleged beating so as to warrant rejection of summary judgment motion).

Thus, the Court concludes that Plaintiff has established a material question of fact about whether Officer McCormick, by failing to intervene to prevent Officer Davidson's putative acts of excessive force, violated Plaintiff's Fourth Amendment rights. *See, e.g., Byrd*, 466 F.2d at 11 (holding that the plaintiff was entitled to have his case submitted to the jury against defendant officers for their failure to intervene when he claimed he was beaten in their presence).

Turning to the second step of the qualified immunity inquiry, the Court asks whether it would have been clear to a reasonable officer in Officer McCormick's situation that Officer Davidson was using unlawful force on Plaintiff—"thus triggering the duty to intervene." *Abdullahi*, 423 F.3d at 775. As discussed above, the nature and degree of force that Officer Davidson allegedly used, as well as Plaintiff's conduct, remains hotly and broadly disputed; therefore, "one can only speculate how visually obvious any violation" of Plaintiff's rights might have been. *Id.* If the events unfolded as Plaintiff alleges, the acts of excessive force could, drawing all reasonable inferences in Plaintiff's favor, be understood by the jury to have taken

place over an extended time period and to have occurred in observable ways—particularly given

Plaintiff's alleged shouts of "police brutality" during the events. Accordingly, there is a question

of fact as to whether a reasonable officer would have thought that he had a duty to intervene

under the circumstances. At trial, Officer McCormick will be able to present evidence showing

that there was no cause to intervene, or "that there was no reasonable opportunity for intervention

or no reasonable method to intervene." *Yang*, 37 F.3d at 286. But, at this stage of the

proceedings, qualified immunity must be denied.

      C.      Officer Zimmerman

      Plaintiff's arguments and supporting evidence do not indicate that Officer Zimmerman

directly used excessive force against Plaintiff. (*See* D.E. 74 at 9; Def. SF ¶ 85 (citing D.E. 76,

Ex. 16 at 8, where Plaintiff's expert Mr. Lyman gave his opinion that Officer Zimmerman did not

use excessive force in the incident).) Instead, Plaintiff brings his Fourth Amendment claim

against Officer Zimmerman on the basis of his alleged failure to intervene. (D.E. 74 at 9.) Once

again, the Court concludes that summary judgment must be denied.

      As previously stated, "police officers who have a realistic opportunity to step forward and

prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but

fail to do so have been held liable." *Miller*, 220 F.3d at 495 (citation omitted). Plaintiff has

presented evidence suggesting that Officer Zimmerman was in the creek at some point during the

incident, that he then went on the bridge above the creek, and that he heard Plaintiff yelling

"Police brutality," "Ow," "No" and "Quit hitting me." (Pl. SAF ¶ 24.) Defendants deny that

Officer Zimmerman was in the vicinity of Plaintiff during the arrest and so argue that he had no

opportunity to intervene. (D.E. 72 at 15.) However, Defendants admit that Officer Zimmerman

was close enough to hear Plaintiff's alleged cries (D.E. 82 ¶ 24 (quoting Zimmerman testimony)), that Officer Zimmerman was personally in the creek for at least the beginning of the incident and then was nearby on the bridge (*id.*), and that Officer Zimmerman helped to lift Plaintiff up the creek bank. (D.E. 73 ¶ 64.) Thus, Officer Zimmerman's presence on the scene, during a substantial period of alleged misconduct, is sufficiently established. *See Byrd*, 466 F.2d at 11.

A separate question is whether Officer Zimmerman, despite his proximity, had the opportunity to intervene. From Defendants' perspective, during the arrest Officer Zimmerman was actively working to push back a crowd of men off the bridge—an unruly crowd that outnumbered the officers and that threatened the officers below. (*See* Def. SF ¶¶ 31-32, 50.) Plaintiff presents the contrary view that while on the bridge, Officer Zimmerman was not managing a dangerous crowd, but was standing with the few people on the bridge, people who were not moving or menacing the officers below. (Pl. SAF ¶ 15.) Precedent teaches that "[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan*, 110 F.3d at 478; *accord Abdullahi*, 423 F.3d at 774. Considering all the evidence, a reasonable jury could conclude that Officer Zimmerman had things on the bridge well in hand, and so once he heard Plaintiff's cries, he could have directed colleagues to stop the alleged extended mistreatment of Plaintiff. *See, e.g., Taylor*, 684 F. Supp. at 185. Moreover, after the arrest, Defendants state that Officer Zimmerman moved off the bridge and to the arresting officers to help get Plaintiff to the path—any threat from the crowd on the bridge would seem to have dissipated by this time. Thus,

30

when Officer Davidson was alleged to have punitively lifted and twisted Plaintiff's handcuffs, Officer Zimmerman would have been on the scene with a realistic opportunity to intervene. *Yang*, 37 F.3d at 285.

The next question for qualified immunity, whether it would have been clear to a reasonable officer in Officer Zimmerman's situation that Officers Davidson and McCormick were using unlawful force, presents the same situation discussed above. *See Abdullahi*, 423 F.3d at 775. The majority of material facts are in dispute: from the conduct of the other officers, to what Officer Zimmerman could have seen and heard, to his capacity to intervene in light of the circumstances on the bridge. Accordingly, the Court concludes that Plaintiff has raised multiple questions of fact that preclude a finding of summary judgment for Officer Zimmerman. *Accord Taylor*, 684 F. Supp. at 185 (denying summary judgment on qualified immunity failure-to-intervene claim, and stating that "[t]he key facts that form the basis of . . . [plaintiff's] excessive force claim are disputed," "[s]o, a consideration of all the undisputed facts gets us nowhere.").

D.    Officer Gasior

Plaintiff does not claim that Officer Gasior used excessive force against him, and instead brings his Fourth Amendment claim against Officer Gasior on the basis of his alleged failure to intervene. (*See* D.E. 74 at 9; Def. SF ¶ 85 (citing D.E. 76, Ex. 16 at 8, where Plaintiff's expert Mr. Lyman gave his opinion that Officer Gasior did not use excessive force in the incident).) Again, given the number of disputed factual questions, the Court concludes that Officer Gasior's motion for summary judgment must be denied.

Plaintiff puts forward evidence, which is largely confirmed by Defendants, that Officer Gasior was by the creek-side during the arrest, standing with Ms. Mulvey and Ms. Mulvey-

31

Tatoris. (Pl. SAF ¶ 23; Def. SF ¶ 30.) Plaintiff claims that Officer Gasior was "comforting" the two women, as opposed to restraining them or preventing them from intervening in the altercation in the creek. (Pl. SAF ¶ 23.) While Officer Gasior says that he did not see anything that happened by the creek, given his admitted location in the area and under Plaintiff's version of events—which involved extended shouts during the altercation by both Plaintiff and the Officers (see, e.g., id. ¶¶ 11, 22-24, 42-43)—a reasonable jury could find that Officer Gasior would have heard or seen something of the alleged beating and shouts of protest and pain from Plaintiff that allegedly occurred there. Moreover, when the evidence and all reasonable inferences from it are read in Plaintiff's favor, Officer Gasior's minimal duties relating to Plaintiff's two female friends do not necessitate the conclusion that he lacked a realistic opportunity to intervene or direct the cessation of an (alleged) unlawful beating and mistreatment, if that in fact was what was occurring. Put differently, Officer Gasior reasonably could be expected to stop his activities, described by Plaintiff as comforting Plaintiff's friends, if Plaintiff actually were being unlawfully beaten nearby.

Subsequent to the arrest, Plaintiff places Officer Gasior in the action, "walking" him down the path after the arrest. (Pl. SAF ¶ 14.) This alleged scenario means that Officer Gasior was near enough to question what Officer Davidson was supposedly doing to Plaintiff's handcuffs. Thus, Officer Gasior's proximity to the scene during and after the arrest, and the potential reasonable inference that he would accordingly have known what was happening, raises a question of material fact as to whether Officer Gasior violated Plaintiff's Fourth Amendment rights. See, e.g., Miller, 220 F.3d at 495.

As with Officers McCormick and Zimmerman, there is a substantial factual dispute

32

regarding how obvious any transgressions of the other officers may have been to a reasonable officer in Officer Gasior's situation. This precludes a finding for Officer Gasior on the second inquiry in the qualified immunity analysis. *See, e.g.*, *Abdullahi*, 423 F.3d at 775; *Taylor*, 684 F. Supp. at 185. Accordingly, the Court denies summary judgment as to Officer Gasior.

## CONCLUSION

For the reasons stated, Defendants' motion for summary judgment on Plaintiff's claim for excessive force, the sole remaining count in the Complaint, is respectfully denied. (D.E. 71.) There are multiple material issues of fact regarding whether Officer Davidson used excessive force during and after the arrest. Similarly, Plaintiff has presented sufficient evidence to raise questions of fact relating to Officer McCormick's alleged use of excessive force during the arrest. For Officers McCormick, Zimmerman and Gasior, Plaintiff has sufficiently raised factual disputes about their putative failure to intervene to prevent the alleged use of excessive force during and after Plaintiff's arrest. The factual disputes also preclude any grant of summary judgment on the basis of qualified immunity, as explained herein. Accordingly, the Court respectfully denies Defendants' motion for summary judgment.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: _____5 - 5 - 06_____

33